# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2022

Lyle W. Cayce
Clerk

No. 21-20264

Joshua Herridge,

*Plaintiff—Appellant*,

*versus*

Montgomery County, Texas; Jimmy Williams,
individually and in his official capacity as Fire
Marshal for Montgomery County, Texas,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-4259

Before Wiener, Graves, and Ho, *Circuit Judges*.

Per Curiam:*

We have considered the briefs, the oral arguments of counsel, and pertinent portions of the record in this appeal. To the extent the unwritten policy enforced against Plaintiff-Appellant Joshua Herridge prevents him

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20264

from orally preaching, we affirm for essentially the same reasons set forth by the district court in its Order Granting Summary Judgment filed April 20, 2021.

However, the record indicates that the Defendants-Appellees also intended, and intend, to prevent Herridge from leafleting and sign-holding at relevant events. The district court's order did not address whether a ban on *these* activities is necessary to protect public safety. Given the district court's superior familiarity with the facts of this case, we vacate that court's order insofar as it allows the Defendant-Appellees to stop Herridge from engaging in those two specific activities, and remand to allow that court to make a detailed analysis as to those activities and to enter judgment accordingly.

The district court's judgment is AFFIRMED IN PART, *see* 5TH CIR. R. 47.6, and VACATED IN PART. The matter is REMANDED for further proceedings consistent with this opinion.

No. 21-20264

JAMES E. GRAVES, JR., *Circuit Judge*, concurring:

I write separately to highlight two significant matters. One is about the activities for which Herridge seeks permission and the other is about a Sixth Circuit decision. Nevertheless, I fully join the majority opinion.

Joshua Herridge sued Montgomery County after he was prohibited from preaching, leafletting, and holding signs directly in front of the Cynthia Woods Mitchell Pavilion during a ZZ Top concert. Instead, officers asked Herridge to relocate diagonally across the intersection—from the southwest to the northeast corner of the streets, where he would have been allowed to preach, leaflet, and hold signs. During this encounter, Herridge told officers he was at the Pavilion to preach, which he confirmed in his first demand letter to the County. Over a year after this encounter, Herridge testified that his goal with this lawsuit was to obtain permission to preach on public property. On appeal, however, Herridge now asserts that he only wants to leaflet and hold signs.[1] In my view, those factual differences are important.

Further, at oral argument, counsel for Herridge urged the court to review the Sixth Circuit's decision in *Saieg v. City of Dearborn*, 641 F.3d 727 (6th Cir. 2011) as persuasive authority on permissible signage and leafletting. But, I fail to see any meaningful comparison to the facts here. In the area where Saieg wanted to leaflet, the City of Dearborn "permit[ted] sidewalk vendors, whose activity [was] more obstructive to sidewalk traffic flow than pedestrian leaflet[t]ing [was]." *Id.* at 727. Here, the Pavilion does not allow

---

[1] Only once before this appeal did Herridge state he "only wants to hand out literature and display a sign in the public area abounding Lake Robbins Drive." However, this statement occurred *before* Herridge's deposition where he reaffirmed that he wanted to preach.

*any* activity during large events—vendors, booths, and leafletting are equally banned.

The *Saieg* court also highlighted the discrepancy between the City of Dearborn's stated interest and the resulting prohibition: "[T]he prohibition of *pedestrian* leaflet[t]ing in the outer perimeter is not narrowly tailored to the goal of isolating inner areas from *vehicular* traffic." 641 F.3d at 740 (emphasis in original). Here, the record indicates that the Pavilion's full prohibition on pedestrian activities stems from a heightened concern that pedestrian congestion caused solely by concert attendees already creates danger of spillage into the streets where vehicles could hit pedestrians. The prohibition on *pedestrian* activities seeks to prevent increased *pedestrian* traffic which would exacerbate the pre-existing danger to *pedestrians* due to vehicular traffic.

Lastly, to the extent *Saieg* is comparable, the Sixth Circuit concluded that narrow tailoring should be addressed from "the perspective of permitting everyone to leaflet, not only [one person]." 641 F.3d at 739 (citing *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 653 (1981)). So, in my view, it is neither relevant nor legally significant that Defendants conceded at oral argument that one individual waiting for a friend in the restricted area would not be asked to relocate absent a dangerous situation.

Defendants have produced multiple types of evidence, including photographs, maps, sworn declarations, and deposition testimony, as to their interests in protecting pedestrians. *Cf. Saieg*, 641 F.3d at 740 (expressing disapproval of the "district court's speculation" as to the government's interest being narrowly tailored because "the record [did] not mention any existing problem of pedestrian traffic . . . . "). On remand, the district court can determine whether this evidence satisfies the requisite narrow tailoring

No. 21-20264

to prohibit Herridge from leafletting and presenting signs during large scale events. Accordingly, I concur.

No. 21-20264

James C. Ho, *Circuit Judge*, concurring:

Joshua Herridge is a Christian who seeks to share the gospel by handing out religious leaflets and holding religious signs while standing in a grassy curtilage near the Cynthia Woods Mitchell Pavilion in Montgomery County, Texas. In particular, he would like to do so during major concerts and other popular events, to maximize the effectiveness of his outreach. But police officers have informed him that an unwritten policy forbids him from doing so. So he brought this suit challenging the asserted policy as a violation of his freedom of speech under the First and Fourteenth Amendments.[1]

This case indisputably implicates fundamental freedoms secured by our Constitution. The "dissemination of . . . religious views and doctrines is protected by the First Amendment." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). And although "the government may impose reasonable restrictions on the time, place, or manner of protected speech," such restrictions must be, among other things, "narrowly tailored to serve a significant governmental interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

So local officials may not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 799. "A complete ban can be narrowly tailored"—but "only if *each activity* within the proscription's scope is an appropriately targeted evil." *Id.* at 800 (quoting *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)) (emphasis added).

---

[1] This appeal concerns leaflets and signs, not street preaching. In his brief on appeal, Herridge states that he "does not seek to preach, but leaflet or hold a sign, in the Montgomery County right-of-way on the block running with Lake Robbins Drive. . . . Herridge does not wish to preach in the right-of-way location. In this spot, he only wants to hand out literature or hold a sign." And during oral argument, his counsel further confirmed that his appeal concerns leaflets and signs, not preaching.

Defendants do not appear to meet this rigorous standard of review. To be sure, they defend the unwritten policy as necessary to prevent pedestrian and vehicular obstructions that would jeopardize public safety. And to support that justification, they present evidence of previous traffic obstruction and danger to public safety caused by commercial vendors selling their wares in the same area during major Pavilion events.

But Defendants present no record evidence that allowing religious leafletting or signs—in contrast to commercial vendors—would result in any meaningful obstruction or danger to the public.

That is a fatal omission. The county cannot justify a restriction on religious leafletting based on harms caused by commercial activity. After all, "sidewalk vendors" are surely "more obstructive to sidewalk traffic flow than pedestrian leafleting." *Saieg v. City of Dearborn*, 641 F.3d 727, 730 (6th Cir. 2011). And respect for First Amendment freedoms requires government officials to be sensitive to such distinctions. *See, e.g., id.* at 740 ("permitting everyone to leaflet . . . does not require the city to permit street vending"); *United States v. Belsky*, 799 F.2d 1485, 1489 (11th Cir. 1986) ("The distinction . . . between the distribution of literature and the solicitation of funds is . . . a reasonable one. Soliciting funds is an inherently more intrusive and complicated activity than is distributing literature. A passerby can take a pamphlet and keep walking. Soliciting funds, on the other hand, can require an extended encounter."); *Heffron*, 452 U.S. at 665 (Blackmun, J., concurring in part and dissenting in part) ("common-sense differences between literature distribution, on the one hand, and solicitation and sales,

on the other, suggest that the latter activities present greater crowd control problems than the former"). [2]

What's more, Defendants admitted during oral argument that a single individual standing in the same restricted area while, for instance, waiting for a friend to arrive would not be asked to relocate unless the police actually observed a dangerous obstruction. The county has not explained why Herridge should be treated any differently. *See*, *e.g.*, *Saieg*, 641 F.3d at 737–38 ("The defendants admitted at oral argument that leafleters have never posed any problems of public safety or breach of the peace at the Festival that could make leafleters more obtrusive than sidewalk vendors. By permitting the more obstructive sidewalk tables in the same place where Saieg wishes to leaflet by foot, the defendants have undercut the credibility of the asserted government interests.").

In the absence of a demonstrated danger, the Constitution requires the county to respect Herridge's First Amendment right to engage in religious leafletting. That said, I agree with the panel majority that these are issues that can be addressed on remand. Accordingly, I concur.

---

[2] In *Heffron*, the Supreme Court upheld a regulation of speech against First Amendment challenge. But that regulation permitted precisely what Herridge seeks to do here: distribute literature from a fixed position. *See*, *e.g.*, *id.* at 643–44 ("Although the Rule does not prevent organizational representatives from walking about the fairgrounds and communicating the organization's views with fair patrons in face-to-face discussions, it does require that any exhibitor conduct its sales, distribution, and fund solicitation operations from a booth rented from the Society."); *id.* at 655 ("The organization may also arrange for a booth and distribute and sell literature and solicit funds from that location on the fairgrounds itself.").